UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FIRST NIAGARA BANK, N.A.,**<br><br>Appellant,<br><br>v.<br><br>**ROSE BASKERVILLE,**<br><br>Appellee. | Civ. No. 16-0812 (KM)<br><br>(Bankr. Docket No. 14-14886)<br><br>**MEMORANDUM OPINION** |

**MCNULTY, U.S.D.J.:**

    This is an appeal by a creditor, First Niagara Bank, N.A., from an order of the bankruptcy court, dated February 1, 2016. That order expunged First Niagara's claim, which was based on a car loan to the debtor, Rose Baskerville. Pursuant to 28 U.S.C. § 158(a), I review "'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005)). This was a discretionary ruling by the bankruptcy judge. Review of that ruling for abuse of discretion encompasses plenary review of legal determinations, and clear-error review of factual findings, contained therein. *See Koon v. United States*, 518 U.S. 81, 100 (1996) (a court "by definition abuses its discretion when it makes an error of law"); *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819 (3d Cir. 2006) (abuse of discretion may encompass "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact"). Finding no abuse of discretion, clear error of fact, or error of law, I will affirm.

    The facts, which are not substantially in dispute, are as follows:

    In 2013, Ms. Baskerville entered into an instalment sale contract with a New Jersey car dealer for the purchase of a 2010 Chevy Malibu. (Appellant's Appendix, ECF no. 3-1, at A9) It obligated her to make payments of $346.70

per month. On March 16, 2014, Baskerville filed for bankruptcy under Chapter 13. Post-petition, she fell behind on the payments.

First Niagara, the financing bank on the instalment sale contract, then obtained relief from the automatic stay. (A 15) Through a repossession agent known as "Stealth Recovery," First Niagara seized the car and sent Baskerville a letter informing her that it would be sold sometime after 4/7/2015. The letter also informed Baskerville that she could get the car back under certain circumstances:

> You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.

The underlying instalment sale agreement is with the car dealer, although it identifies First Niagara. It provides that, if the debtor does not recover the collateral, "we" will sell it in satisfaction of the debt, and will deduct allowed expenses "we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it."[1]

The repossession occurred on March 25, 2014, and the followup letter was dated March 26, 2014. Just ten days later, within the deadline imposed by the letter, the debtor paid the arrearage to First Niagara and presented proof of insurance. (A 18) Stealth Recovery, after first stating that the car had been sold, corrected itself and stated that the car had been sent to a location in upstate New York, approximately 3½ hours away. In addition, the car was incurring storage charges of $100 per day (*i.e.*, approximately $1100 or $1200 as of that date, and running). Unable to afford the travel or to pay the mounting storage charges, the debtor did not recover the car. The car was therefore sold.

Baskerville filed an objection to claim. In response, First Niagara argued that its removal of the car to upstate New York did not relieve the debtor of

---

[1] I take the quotation from First Niagara's brief, at p. 15. The attached copy of the agreement is barely legible. The sense seems to be "we" are entitled to recover any amount that "we" actually pay for storage, etc. That is not necessarily the same thing as a charge that the repossession agent extracts from the car owner.

2

liability. Bankruptcy Judge Stacey L. Meisel heard the matter, found that the bank's conduct had been unreasonable, and expunged the claim.

The parties do not dispute that, under the UCC, a secured party's disposition of collateral must be "commercially reasonable." N.J. Stat. Ann. § 12A:9-610. Reasonableness encompasses such factors as the method, manner, time, place, and terms of disposition. *Id.*

Niagara cites its proof of claim, states that this was sufficient to shift the burden to the debtor, and objects that the bankruptcy court did not construe the facts favorably to itself or order an evidentiary hearing. *See* Appellant's Brief at 12, ECF no. 3 (citing, *e.g., In re G-I Holdings, Inc.,* 477 B.R. 542, 558 (Bankr. N.J. 2012)). Baskerville points out, and First Niagara does not dispute, that both sides presented facts, and that neither side requested an evidentiary hearing. At any rate, the facts as presented to the court were not substantially in dispute. First Niagara simply contended, then as now, that it had a right to act as it did.

Both sides cite general equitable doctrines, such as "unclean hands." First Niagara argues, *inter alia,* that the debtor is primarily at fault for failing to keep up on the payments. That, of course, is a classic argument that proves too much. The debtor's default is a given in every case where collateral is being disposed of; the issue is the reasonableness of the procedures.[2] Particularly in its reply brief (ECF no. 8), First Niagara argues that Baskerville slept on her rights when she failed to take steps to recover the car. The bankruptcy court was entitled to conclude, however, that Baskerville's failure to recover the car was a result of, not a justification for, First Niagara's spiriting it away to upstate New York and imposing storage charges of $100 per day.

First Niagara adds that removing the car to a neighboring state where the bank itself is headquartered (as opposed to, say, California) was commercially reasonable. Baskerville, however, did not especially set out to deal with a bank in upstate New York; she entered into an instalment contract in connection

---

[2] The UCC section requiring reasonable procedures is entitled "Disposition of Collateral after Default." N.J. Stat. Ann. § 12A:9-610.

3

with buying a car from her local dealer. It is true, as First Niagara argues in its reply brief, that the issue is not one of personal jurisdiction. But Baskerville's reasonable expectations and the hardship imposed by the bank's procedures are relevant to reasonableness, and they were legitimately considered by the bankruptcy court.

The bankruptcy court was entitled to weigh the equities as between a debtor who immediately brought the account current and a creditor who placed formidable practical obstacles in the way of recovery of the car. That court was entitled to consider whether the bank's conduct and the allowance of its claim, in the context of the UCC and the goals of Chapter 13, were reasonable. The bankruptcy court's ruling represented an application of its discretion to the particular facts of the case. Whether this Court would have exercised its discretion the same way is irrelevant; I am unable to find an abuse of discretion here.

## CONCLUSION

For the foregoing reasons, the February 1, 2016 order of the bankruptcy court expunging the claim of First Niagara Bank, N.A., is AFFIRMED. An appropriate order will be entered.

Dated: February 13, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**